We will hear argument next in No. 095030, Forbes v. United States. This is old news. Mr. Bernstein, when you're ready. May it please the court. My name is Jules Bernstein. I am counsel for Appellant Forbes in this case. I am accompanied by my co-counsel and wife, Linda Lipset, and my co-counsel, Edgar James. The instant appeal arises out of a final order of the United States Court of Federal Claims granting summary judgment to the employer, United States, in a Fair Labor Standards Act case. Appellant Forbes believes that notwithstanding three prior decisions of panels of this court, namely the decisions in Bobo, Adams, and Easter, which held required driving of government vehicles between home and work by certain federal employees to be non-compensable under the FLSA, the unique facts of this case, as well as— Mr. Bernstein, aside from the unique facts of the case, you obviously didn't have the advantage of the Easter opinion when you did your briefing in this case, nor did the government. But I'd just like to ask you, which of the arguments you're presenting in your brief here are different from the arguments that you presented in Easter? I'd like you, if you could, to address first the arguments that are new and different from the arguments you presented in Easter. All the arguments you presented in Easter, of course, were rejected. For the benefit of me, I just want to run through, for me, the arguments in this case, the issues and arguments that are new from Easter. First, Your Honor, Ms. Forbes takes issue with the decision in Easter to the extent that— Unless you do that with an in-bank petition in Easter, correct? I beg your pardon? You file a request for re-hearing by the panel or re-hearing in bank to challenge Easter. We plan to file a petition for writ of certiorari in Easter. Whether it's a writ of certiorari or it's a request for re-hearing here, it's not properly addressed to this panel. Even if I didn't like Easter, let's assume that I agreed with you on every one of your so-called Easter issues. It would be a waste of my time and, kind sir, a waste of your time for us to talk about that. Not entirely, Your Honor, because we have asked this court and the Secretary of Labor to provide her views with regard to the matters that the court in Easter held did not follow from the Secretary's regulations. You asked this panel to stay at hand while the Secretary would consider your request and perhaps provide you with a writing of some sort, and that request was denied. That motion to stay proceedings was denied, but that doesn't mean that we cannot continue to ask this panel or the court on bank to ask the Secretary for her views so that that matter is still alive before this panel. Are we barred from deciding this case until the Secretary expresses her view? I don't believe so, Your Honor, but I do think that it would be the better part. If we were to decide, for example, you're obviously familiar with the procedures of our court, you've been here many times. If we were to decide to affirm this appeal under our Rule 36 this afternoon, then the Secretary's views and the letter you asked for from the Secretary would be pretty much irrelevant, right? Unless we filed a petition for re-hearing on bank based upon the Secretary's views, and hopefully the Secretary might come in prior to that time. I guess the government is a very large entity, but the Department of Justice represents all of the executive agencies and departments in this court, and Mr. Brilliant is here representing as a member of the Department of Justice and then presumably has at least access to the Department of Labor. It would be kind of odd, it seems to me, for us to say, as if we were asking the views of an entirely different party, to ask the views of the Secretary of Labor in a case involving the United States as a defendant represented by the Department of Justice, don't you think? No, Your Honor, because for one thing, there have been cases in which agencies have disagreed with regard to their position, including disagreement with the Department of Justice. Independent agencies or executive branch agencies filing in the same case? I cannot say. Because independent agencies stand very differently, of course. I mean, the NLRB could have a position, or for that matter, the MSPB could have a position very different from the Department of Justice. I do recall a case where the Department of Defense had a disagreement with the Department of Justice over a policy matter. My recollection is those tend to get worked out, typically in the Solicitor General's office, and that litigation with the executive branch departments tends to be the departments taking a single position. I mean, there may be examples to the contrary. It seems a bit awkward to send a letter asking for another one of Mr. Brilliant's clients, in effect, to tell us what they think. Well, I would have to say, Your Honor, with all due respect, that we believe the Secretary's position is and would be otherwise, and the Secretary is clearly entitled to an opportunity to be heard at this level or beyond, I would have to say, as suggested at the Solicitor General's level. But we have a new Secretary. We do not have a new Solicitor of Labor. A new Solicitor of Labor has not yet been confirmed, so there's a certain amount of uncertainty over a DOL at the present time. But we have asked, and it seems to me that there would be no harm in this panel doing the same, to try to get it right. And that's all. I think you can ask Mr. Brilliant as to whether this – To come back to the matter in front of us, which is Case 20-9503-0, I take it from your earlier answer to my question, your answer is no. There is no material difference between the arguments you presented at Easter and the ones you present today. I don't agree with that, Your Honor, because – Well, I asked you to tell me which ones were different, and you didn't say anything. You put aside the facts when you asked the question. And the facts in this case are that Ms. Forbes is required to take a government vehicle from home, and she is restricted as to what she can do. She has no freedom to do the things that then-Judge and now-Justice Sotomayor said in the Singh case in the Second Circuit. And I sent a letter to the Court distinguishing the Second Circuit's cases from this Court's cases about the ability of employees, and that was supplemental authority, the ability of employees to use their travel or commuting time for their own purposes. And in the federal sector, they may not. And that is a restriction upon employee time and their lives that the government really doesn't have the right to impose without compensating them for it. My understanding was that Easter had the same prohibition. That is true. So what's the distinction factually between this case and Easter on that basis? On that score, Your Honor, there is no distinction. I would agree. Is there another factual distinction? I'm trying to get at it. Really, I'd like to help you. I'm trying to get at where is there a material difference between what's happened in this case and what's happened in the previous case. By real mean, I'd ask you what's the material difference in the five pending cases you've got downstairs that some panel's going to have to worry about. Or the 15 cases you've got in the Court of Federal Claims. Let's put it this way, Your Honor. All of these plaintiffs are entitled to their day in court and the Supreme Court. So to that extent, we are legitimately here. But there comes a point in time, does there not, sir, when the only difference, the issues of law are all the same. You've lost on all the issues of law. The only question then is whether or not there's a material difference on the facts. Now, you've just told me on this only issue that could possibly have any importance, which is the restriction on personal use, etc. There's no difference between this case and Easter. There is, Your Honor. So let me take your next shot to tell me where in this case is different from Easter. So far, all of the pitches that come over the plate have been called a strike against you. So what's the next one? Your Honor, here the government gives the employee the car so that she can go directly to her first stop, her first stop of many, and then go home from her last stop. And what that means is that the time spent by that employee, by the plaintiff here, driving, is now used productively at the job site. And so the government, by giving her the car, prohibiting her from using her time as she sees fit during commuting, gets more production out of this employee. And that is true in the context of field work for which there are specific regulations that were not present in any of the other cases. Did the police with the police dogs drive their car from the place where they had the police dogs to their place of work? I have no idea. Where do you suppose they else drove just around? Pardon, Your Honor? Where on earth would they else have gone? I mean, you get your dog out of the kennel in the backyard where you were feeding it, you didn't pay to do so, you put the dog in the car and you drive to work. You don't go to the baseball game or something like that, right? This is if my time is up. Isn't everybody who's got a government car and they're driving the car to work having this additional efficiency on behalf of the federal government that you argue in this case? Give me an hypothetical example of somebody who gets a car and the gas or whatever from the government and drives it to work who is going to not promote the efficiency of the service. I mean, other than somebody who goes on a frolic and detour and goes and stops to see their girl or boyfriend on the way to work and they're not supposed to do that. They'll be fired or suspended for having done so. Sure, and you'd want them to. I don't know about that, Your Honor. Right, but I'm still looking for a difference. Well, I do think that the regulations relating to fieldwork, which say in effect the purpose of giving these people these cars is to improve the efficiency and economy of the government, suggests that the purpose of giving them the cars is part of their employment. And frankly, Your Honor, in the Bull case, you said that there was a requirement that exemptions to the Fair Labor Standards Act were to be narrowly construed. And you quoted Judge Dyke in the Doe case to the same effect. We're talking about the provisions here. What's ultimately involved are the provisions of the Portal to Portal Act. And is this an exception based upon the fact that this is integral and essential to the performance of the job? So the real issue in this case is the Portal to Portal Act that has not yet been addressed in any of the cases to that extent. And what's your argument going to be on the Portal to Portal Act? The argument is that this driving is integral and indispensable to the performance of the job. So they go to their first stop and they come from their last stop home. It's integral and indispensable to obtain the efficiency that results from giving them the car to drive home. And that's a factual issue, and frankly, we think it comes out on our side practically as a matter of law. Remind me, I knew at one time the answer to this, but I don't now. What is the rule if you are driving your own car, but your assignment is, within the same commuting area, but your assignment is that you show up at different locations on different days? In other words, there's a main office, but you are typically going to different places directly from home. Do you get paid for the commuting time if you're driving your own car in that situation? No. No. But you are free to stop and do as you wish. Okay. Why don't we save your rebuttal time, and we'll save you several minutes of rebuttal time if you need it, and we'll hear from Mr. Brennan. Thank you. May it please the Court. I've been listening for the past 15 minutes to see if there was a distinction raised with respect between this case and Bobo Adams and Easter that I would have to respond to, because that's really all there is to talk about. Let me ask you, because your recollection of these cases I'm sure is better than mine. I cannot remember if any of the prior cases involved some travel other than travel to a single main office and back, as opposed to what Mr. Bernstein has described as being the facts of this case, which are travel to a designated non-main office and back home. No, actually, in Easter it was peripherally involved. Easter did not involve diversion investigators, and the purpose that they were given the cars was not specifically to go to field work locations. But in Easter, Mr. Bernstein made the point that some of the plaintiffs in that case did sometimes commute to a site other than their regular office. Right. That was from time to time. In fact, that was one of the reasons they were asked to take the cars, because they might have to go somewhere else, if I recall correctly. But that wasn't their regular. As I understand, this is a case of somebody who's regularly going somewhere other than the main office. And the question is, does that make a difference? No, it doesn't. Well, first of all, it's not that they regularly go to other locations, but it's when they go to field work locations that they get the car, since they're less prone to—or not prone, perhaps, to have to respond to emergencies at any hour of the day directly from home, as is the case, say, with criminal investigators or some of the plaintiffs in Easter. They don't routinely get cars for commuting. I see. So that they— When you're saying they, you were referring to Ms. Forbes. Well, right, Ms. Forbes. And others not before us. Right. Okay. Well, let's just talk about Ms. Forbes. I was in the pipeline of cases. I understand. And— When somebody, either in a government car or in his or her own car, has a permanent duty station, you don't get the commute time as overtime. But if you are asked to drive to a temporary duty station that, let's say, is 50 miles beyond your normal commute, you do get paid for that time, do you not? I think the threshold is 50 miles, but if it's outside the regular duty station, that's different. And you do get paid overtime. I believe you get paid overtime if it's—the agencies have some leeway as to regulations as to what the geographical distance is, but I think that, yes, if you were commuting outside, let's say, if it's a 50-mile radius— It's the local commuting area is the concept, right? We're talking here about local commuting area. What's Ms. Forbes' work day? I mean, what does she—I suppose if she leaves the house at 8 o'clock in the morning to drive to this work site, does she start—does her pay start being earned at 8 o'clock? Her pay starts being earned when she arrives at the workplace. When she arrives at the workplace, I see. Now, as to whether it's the regular workplace or the regular office or a different site, I'll just refer to what this court said in Easter, although, again, it did not involve a diversion investigator doing field work, but what the court noted—this is in the published version on page 1341— the court said it's unclear why an employee's travel between home and a fixed workplace should be uncompensated while the same employee's travel between home and varying work locations within the commuting area should be compensated. The court wanted to point that out. Could you help me out just a little bit? Just vary the facts in this case enough so that Ms. Forbes would be entitled to compensation? I know you can do that. I mean, just change the facts. Make me a little hypothetical. It would help me out to know what she'd have to be doing in order to be paid the money she wants. Well, I think if she were—first of all, if she were driving outside the commuting area, that would be one example. Let's assume it's within the commuting area. It's from her house to this place of work, which is not her usual place, but it's a field station. What does she have to do while she's in the car, or what has to be done to restrict her behavior while she's in the car? Well, as far as restrictions, I'm not sure what rational restrictions there would be that didn't in fact exist, both in this case and in Adams, Bobo, and Easter. Well, suppose she had to stop three places on her way home to pick up official mail for the agency or on her way to the office and pick up mail. Under those circumstances, presumably that's work for which she'd be compensated. Well, I think that might be different because then she's being told to do something other than commute. I'm trying to give you a hypothetical that could be work as opposed to what you say this is. Right, right. What happens if along the commute she's told because, I don't know, somebody in the department is interested in clean highways, she works for the highway department, if she sees any trash on the highway, she's supposed to stop and pick it up. Well, I suppose if she stops and picks it up, and it's not de minimis. I mean, if she stops and it takes her a minute to do it, I think the court would find that that's de minimis. I mean, just like in Bobo where the employees... So we'd have to turn on how much trash she picked up? I mean, that seems silly, doesn't it? How do you administer a rule like that? Well, that's what the court said in Bobo. What this court said in Bobo was that for the commute to be compensable, there had to be not only some work being done, but the work had to be more than de minimis and that in Bobo it was not. Now, it involved occasionally stopping to take the dog out to relieve itself, occasionally certain other things relating to caring for the dog because these were dog handlers, and that's why they were driving government vehicles. And the trial court said that was de minimis, and this court agreed that if it's only de minimis, it's not compensable. In this case... So let's assume that you've got a co-pilot, somebody driving with you, and they have a nice wireless laptop computer, and they're told that they're supposed to be working on the computer all the time while they're going to the place of work. I mean, they're answering queries and sending messages and doing all that stuff. They would probably be deemed to be working, right? You think so. Yeah, I think if someone was a passenger and doing the work... I just want to nail the passenger down. Now, what happens if you're the driver and you're told to provide a safe and hospital workplace for your co-worker while driving to and from work so as to make certain that you don't go too fast, you don't put on the brakes, you have a nice smooth ride? Well, that's the way you should drive anyway. Well, not necessarily, right? I mean, in other words, normally you don't... Ideally, you try not to drive jerky, and you try not to drive in a way that's uncomfortable for yourself or for a passenger, if there is one. Normally, there wouldn't be a passenger. But basically, the thing is... No more than a chauffeur, for example, that's all you're doing. Well, if you're a chauffeur and that's your job, that's something else. Then driving is your job, and what you're doing is your job. But if you are a diversion investigator, a criminal investigator, or any of these law enforcement type jobs, and you're driving the car to get to work or to get home from work, then you're not a chauffeur, then you're commuting. And even if you happen to have somebody with you, you'd still be commuting. Now, if you had to go out of your way to drive this passenger to some different place, well, then maybe you're being a chauffeur. Then you're not just commuting. But this case, by definition, involves only straight commuting. And the reason I say that is the same as in the previous cases we had. We had a settlement where we resolved all the FLSA claims, except claims for time solely spent driving between home and work in a government vehicle. So it's strictly the commuting that's at issue here. And in that respect, this case is entirely indistinguishable from Bobo, Adams, and Easter. And I think this Court has recognized virtually every argument that has been made by appellant in this case has been rejected. I realize that Mr. Bernstein is correct that all of his many clients have a right to a day in court, and I don't mean to suggest they don't. And I don't mean to suggest that the two of you can't make this a lifetime's work, as it seems to be, almost, right? Are you on all five of the cases that are reflected in the briefs as being related cases? Yes. Wolfen, Anderson, Boyer, Hamilton, Slocum? That's right, Your Honor. And are there more cases downstairs? There are some that have not been appealed yet. Well, let's just assume for purposes of argument that this balance of cases are going to come up, or like this case, they don't present any new legal issues at all that haven't been resolved precedentially. I mean, the petition for re-hearing with the in-bank request in Adams was denied. How do we get at a fair and efficient administrative administration adjustment that gives Mr. Bernstein's clients their day in court, but on the other hand doesn't consume endless hours of this court on matters where our hands are tied? Well, I've enjoyed the argument that I know Mr. Bernstein by reputation, a wonderful reputation, and I'm pleased to hear the argument, but for my money, this case isn't going anywhere. And if the other five are like that, do you have any suggestions for how we more efficiently deal with these cases? Well, I think if the other appeals are not at some point withdrawn based on the previous decisions of this court, I suppose one possibility is just moving them along with a Rule 36 ruling, and if Mr. Bernstein wants to take them up, he can do that, and they'll be in a posture to do that. Well, does the government contemplate perhaps summary proceedings by way of motion? I mean, you must be aware of how our docket looks like in cases from the Veterans Court, in cases from other venues where a motion is made to dismiss the case on a particular ground. It goes to a motions panel. I must say we are contemplating that for the future cases. This case was briefed before Easter was decided. Yes, I began the argument by saying neither side had the benefit of that opinion. The opinion made quite clear. I believe the Easter opinion started by saying we have little to add to the quite thorough and elegant opinion of the Court of Claims, but we believe we should lay some of these issues down and lay them out for the benefit of knowing how this Court feels. I think at this point we could file, in the other cases, a motion for summary affirmance on the strength of Easter or wait for a decision in this case and then do the same thing on the strength of Easter and this case, but I think that is very likely, of course, that we would follow. There's not much that this case adds to the strength of Easter. They're the same. The only thing is, again, as Mr. Bernstein has argued, that this is a diversion investigator case involving field work, whereas the other cases weren't. If we add Forbes in, then that distinction doesn't exist anymore either. That's really the only difference. Very well. Thank you. Thank you very much. Mr. Bernstein, do you have any further? Your Honor, thank you. Two points or three. First, for 20 years, roughly from 1980 until this Court's decision in Bobo, OPM said that this driving had to be paid, and it was only this Court's decision in Bobo that put a stop to the compensation of federal employees for such driving. Now, Bobo, in our view, was decided on a mistaken basis, namely the Reich decision in the Second Circuit where the Secretary of Labor took the position that it was compensable, and we have the Secretary's position laid out in our brief. So, frankly, we have a full circle that's taken place here with what I would have to describe as judicial legislation overruling the Secretary of Labor and OPM. Well, in all due fairness to us and to you, if you say we built a big red brick wall in Bobo and all your cars you drive into it collapse, maybe the answer is for you to seek legislation. I think, Your Honor, the answer may lie in your Rule 35a.1, which says that although only the court en banc may overrule a binding precedent, a party may argue in its brief an oral argument to overrule a binding precedent without petitioning for hearing en banc. The panel will decide whether to ask the regular active judges to consider hearing the case en banc. And, frankly, in our brief we argued for the overruling of Bobo and Adams and now, of course, Easter, and we think it's perfectly justified. And I think the Secretary's opinion on this matter would help matters along. So this case is far from over because you have... I hope you didn't take me to suggest that you were out of place by arguing in your briefs that we should overrule those cases. I understand that you're entitled to do so. I just have this feeling you get to a stage where, I don't mean to say it in a majority way, out in Kansas we used to say you were spitting up wind. Won't be the first time. Well, I understand that, but, I mean, you're a taxpayer. You have a little conflict of interest. It costs money to heat this building, air condition the building, to pay Mr. Billion's salary, pay our salaries. There comes a time when, you know, somebody says, gee whiz, we've now heard 150 of these cases and they were just marginally different. And you sort of add up what the societal cost was of the 100 cases and you say, was it worth it? It's being made up big time by the pay that the employees aren't receiving for their work. Finally... Point well taken. Under the guidance of OPM today, there is a provision that says if an employee is required to work during travel, e.g., by being required to drive a government vehicle as part of a work assignment, that's FLSA compensable. Now, if these employees were not engaged in a work assignment, I don't know what they were doing. So, pardon me? I think commuting is the answer that OPM gets, which they distinguish from a work assignment. I don't think if you mean that... When I go home, if I go to... I get on the subway and I go over to the D.C. Circuit, let's say, to sit by designation, I'm on a work assignment. If I get on the subway to go home, I'm commuting. Yeah, but you can go to a bar and have a beer or do anything you want. These employees must go directly back and forth in that car without stopping. The time, as Judge Justice Sotomayor said in her case in Sing, they can do whatever they wish. So, you're talking about a very different case. Okay. Thank you very much. Thank you.